UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JEFFREY CONCEPCION,<br><br>  Plaintiff,<br><br>  vs.<br><br>JAMES E. TILTON, et al.,<br><br>  Defendants. | Case No: C 08-2296 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

    Plaintiff, Jeffrey Concepcion, was previously convicted of first degree murder. He currently is in the custody of the California Department of Corrections and Rehabilitation at Pelican Bay State prison. Through counsel, Plaintiff brings the instant action, pursuant to 42 U.S.C. § 1983, claiming that his right to due process was violated as a result of Defendants' decision to validate him as a member of the Northern Structure prison gang. The parties are presently before the Court on Defendants' motion for summary judgment. Having read and considered the papers filed, and being fully informed, the Court GRANTS Defendants' motion.

## I. BACKGROUND

### A. OVERVIEW

Plaintiff is serving a life sentence for first degree murder.  Compl. ¶ 1, 4, ECF No. 1. While incarcerated, Plaintiff was found guilty of "Stabbing Assault with Serious Bodily Injury" at a hearing on November 10, 2003.  Young Decl. Ex. B, ECF No. 22.  An investigation into the incident revealed that on July 29, 2002, Plaintiff, while on the C-Facility 2-Block concrete yard, approached inmate Cesena (K-81134) from behind and stabbed him twice in the neck.  Id.  Plaintiff was found guilty and was assessed a twenty-four month determinate term in the Security Housing Unit ("SHU").  Id. Ex. C.  Plaintiff admits that the stabbing incident "warranted a determinate SHU term…."  Compl. ¶ 5.

### B. GANG VALIDATION PROCESS

In California, allegations that an inmate is involved in prison gang activity must be investigated by an Institutional Gang Investigator ("IGI").  See Cal.Code Regs. tit 15, § 3378(c).  A prison gang "associate" is an inmate who is involved periodically or regularly with members or associates of a gang.  Id. at § 3378(c)(4).  Identification as a prison gang associate requires at least *three* independent source items of documentation indicative of association with validated gang members or associates.  Id.  The IGI must provide the inmate with written disclosure of the source items uncovered in the investigation.  Id. at § 3378(c)(6)(C).  When confidential sources are used in the validation process, a Confidential Information Disclosure Form 1030 is to be provided to the inmate to protect the confidentiality of the source.  Id.  The IGI must then interview the inmate suspected of gang activity and allow the inmate the opportunity to be heard regarding the investigation. Id. at § 3378(c)(6)(A).  Thereafter, the documents comprising the investigation are sent to the Office of Correctional Safety ("OCS") to either validate the inmate as a gang member or associate, or to reject the validation.  Id. at § 3378(c)(6).[1]

---

[1] At the time of Plaintiff's validation as a gang associate this office was known as the Law Enforcement Investigations Unit ("LEIU").

### C. INVESTIGATION OF PLAINTIFF

On April 20, 2004, the assigned IGI considered four pieces of information used as source items which were deemed indicative of Plaintiff's association with the Northern Structure prison gang. See Fischer Decl. ¶ 3, ECF No. 21. The source items disclosed to Plaintiff were: (1) a form 128-B, dated April 19, 2004, authored by Officer S. Zanini, identifying Plaintiff as having corresponded with a validated Northern Structure member through the use of a "third-party mail drop"[2]; (2) a form 128-B, dated April 19, 2004, authored by Officer Zanini, identifying Plaintiff's tattoos as symbols used by the Nuestra Familia/Northern Structure prison gangs; (3) a debriefing report, dated February 27, 2004, authored by Sergeant A. Murphy, identifying Plaintiff as participating in Northern Structure gang activities in C-Facility;[3] and (4) a debriefing report, dated November 25, 2003, authored by Officer S. Wheeler, identifying Plaintiff as holding a position of authority for the Northern Structure while housed in Administrative Segregation. Id. Exs. 4-7.

Lt. Reed interviewed Plaintiff regarding the disclosed source items. Fischer Decl. ¶ 5 and Ex. 4; see also Compl. ¶ 6. For each of those items, Lt. Reed provided Plaintiff with a CDC-1030 Confidential Information Disclosure Form, which disclosed the nature of the information contained in the confidential memoranda. Young Decl. Ex. D, ECF No. 22; Compl. ¶¶ 6, 30. Lt. Reed then sent the validation package (consisting of the source items, the interview, and other pertinent information) to the Office of Correctional Safety ("OCS"), which is responsible for making the validation decision, for review and approval in order to validate Plaintiff as an associate of the Northern Structure prison gang. Fischer

---

[2] Prison gang members and associates often use "third-party" mail drops to communicate with one another. Fischer Decl. ¶ 4. Specifically, the member/associate writes to a third-party, who then passes along the communication to the other member/associate. Id. Here, Plaintiff (aka "Turtle") possessed an address book that contained two addresses for Robin Barraza, the mother of inmate Barraza (aka "Bubba"), a validated Northern Structure gang member. Id. Previously, prison officials intercepted a letter from another inmate and suspected gang member, Juan Gonzalez, to Ms. Barraza, asking her to relay a message to her son. Id. Ex. 3. Mr. Gonzalez also asked about "Turtle" (referring to Plaintiff). Id.

[3] "Debriefing" reports refer to the reports generated after an inmate drops out of a prison gang and provides information to prison gang investigators specifically relating to that gang. See Cal. Code Regs. tit. 15, §§ 3378(c)(2); 3378(c)(8)(M).

Decl. ¶ 3, 5 and Exs. 1, 4.  The OCS reviewed the four source items and concluded that the first three met the requirements for validation, and thus, validated Plaintiff as an associate of the Northern Structure prison gang on July 28, 2004.  Id. ¶ 3 and Ex. 1.

### D. PROCEDURAL BACKGROUND

Following his validation as an associate of the Northern Structure prison gang, Plaintiff submitted a prison grievance (Inmate Appeal log no. SAC-04-01642) to challenge the validation finding.  Young Decl. Ex. E.  Plaintiff's appeal was considered at the second formal level of review; the reviewer found that three independent source items of documentation met the requirements for Plaintiff's validation as an associate of the Northern Structure prison gang.  Id. at AGO-065 to AGO-066.  Plaintiff then appealed to the Director's level, which affirmed the denial of the appeal, thereby exhausting Plaintiff's administrative remedies concerning the validation.  Id. at AGO-080 to AGO-081.

Plaintiff filed suit in this Court on May 2, 2008, against Defendants J. Tilton, S. Kernan, R. Rimmer and R. Horel.  The Complaint alleges that Defendants violated Plaintiff's due process rights on the ground that the evidence of his gang activity lacked indicia of reliability at the time he was validated as a prison-gang associate and placed in the SHU.  Defendants answered the Complaint, and now move for summary judgment. ECF Nos. 19, 20.  In particular, they contend that there is no genuine issue of material fact concerning Plaintiff's allegation that the evidence of gang activity in his file lacks the requisite indicia of reliability to support his gang validation.  Alternatively, Defendants claim that they are entitled to qualified immunity.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material

fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). An issue of fact is "material" if, under the substantive law of the case, resolution of the factual dispute might affect the outcome of the claim. See Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for motion for summary judgment. Fed.R.Civ.P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

### III. DISCUSSION

#### A. DUE PROCESS

The Due Process Clause of the Fourteenth Amendment mandates that no State may "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Changes to an inmate's conditions of confinement may amount to a deprivation of a constitutionally protected liberty interest, provided that the liberty interest in question is one of "real substance." Sandin v. Conner, 515 U.S. 472, 477-87 (1995). Placement in the SHU imposes an atypical and significant hardship within the correctional context and thus affords a prisoner a protected liberty interest in avoiding confinement in administrative segregation. See Wilkinson v. Austin, 545 U.S. 209, 223 (2005).

Plaintiff avers that he was denied due process because prison officials did not have sufficient evidence to validate him as a member of the Northern Structure prison gang. A due process claim is subject to the "some evidence" standard of Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is only "minimally stringent." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. Toussaint, 801 F.2d at 1105. The evidence relied upon must have "some indicia of reliability." See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).

When considering the validation of an inmate, the Court must take into account "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators, therefore, should be accorded wide-ranging deference in the adoption and execution of policies and practices that, in their judgment, are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 545-47 (1979) (citations omitted). California's policy of housing validated gang members and associates in a SHU is an administrative strategy to preserve order in the prison and to protect the safety of all inmates. Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003).

**B.    CLAIMS**

The gravamen of Plaintiff's claims is that the three source items supporting his validation as a gang member were lacking in indicia of reliability. As an initial matter, Plaintiff challenges the first source item used for validation; namely, the correspondence to a third-party mail drop (i.e., Ms. Barazza). Specifically, he argues that there is no proof that Ms. Barraza is a mail drop and that the letter to her does not show gang activity, ostensibly because it was not sent or received by Plaintiff, only mentions Plaintiff by his nickname "Turtle," and does not mention any unlawful, criminal, or illegal gang activity and that the recipient. Pl.'s Opp'n at 4.  None of these arguments is compelling.

Defendants never contended that the letter was sent or received by Plaintiff, nor is that fact material. Rather, the letter is significant in that it shows that Ms. Barraza, the

mother of a validated Northern Structure gang member, was being used as an intermediary for communications between validated and suspected gang members.  It is uncontroverted that approximately six months prior to Plaintiff's validation, prison officials intercepted a letter from another suspected gang member who requested that Ms. Barraza communicate information to her son, a validated gang member.  The letter also sought information regarding "Turtle," which Plaintiff does not dispute is his nickname.  This evidence supports the inference that Ms. Barraza was, in fact, serving as a conduit for information between known and/or suspected gang members.  Thus, the fact that Ms. Barraza's contact information was in his possession certainly constitutes some evidence of Plaintiff's gang affiliation.

Next, Plaintiff argues that the second and third source items (i.e., the debriefing memoranda) should be consolidated because each provides the same evidence.  See 15 Cal. Code Regs. tit. 15 § 3378(c)(8)(I).  If Plaintiff were correct, there would only be two, instead of the requisite three, independent source items.  The Court has reviewed in camera the debriefing memoranda, dated February 27, 2004, and November 25, 2003, and finds that they do *not* provide the same evidence.  Each memoranda involves a different incident and issues.  Both were used as source items to validate and do not provide identical evidence.  Plaintiff therefore fails to persuade the Court that consolidation of the two source items is warranted.

Finally, Plaintiff argues that the source items generally lacked any indicia of reliability.  Pl.'s Opp'n at 4, ECF No. 27.  In particular, Plaintiff attempts to analogize this case to Lira v. Cate, where the district court found that "all of the validating evidence suffered from reliability problems:  the evidence was either uncorroborated . . . or equivocal and marked with inconsistencies  . . . ."  No. C 00-0905 (N.D. Cal. Sept. 30, 2009), Findings of Fact and Conclusions of Law at 43, ECF No. 456.  In that case, one of the confidential inmate debriefing reports did not mention the plaintiff anywhere in its narrative portion, but merely specified his name "in the laundry list at the end of the report."  Id. at 45.  The court found that association between plaintiff's name and his gang connections

were speculative and were neither corroborated nor investigated; that there was no record of the incident referenced in the debriefing memo; that many of the allegations were over ten years old at the time of the debriefing; and there was also another prisoner with the same name as the plaintiff that giving rise to confusion. Id. at 46-48. Moreover, an incident report that was used for validation was not reliable because there were two markedly different versions of the same report, the first, written contemporaneously, gave no mention of plaintiff, while the second, written a year later named the plaintiff and was written in a confusing manner. Id. at 45.[4]

The circumstances of this case are distinguishable from those in Lira. The Court has carefully reviewed the evidence submitted in this case, including confidential information submitted under seal for the Court's in camera review, and has found that it meets the "some evidence" standard supporting Plaintiff's continued gang validation. Unlike Lira, the confidential declaration contains information that is recent (relative to his validation), corroborated and otherwise contains evidence sufficient to demonstrate an indicia of reliability. Weighing the sufficiency of the evidence, the source items required for validation under section 3378 have the requisite indicia of reliability to support prison official's conclusions that there was "some evidence" showing Plaintiff was an associate of the Northern Structure prison gang.

## II. CONCLUSION

The Court finds that Defendants have met their burden for Summary Judgment of showing that there was no violation of due process when validating Plaintiff as an associate of the Northern Structure prison gang. Plaintiff has not provided evidence beyond mere allegations and pleadings to support his claim of inadequate indicia of reliability. Because the Court has determined that the record was sufficient and provided "some evidence"

---

[4] Plaintiff also maintains that Defendants did not comply with the terms of the settlement in Castillo v. Alameida, No. C 94-2847 MJJ because "laundry list identifications in debriefing reports are no longer acceptable." Pl.'s Opp'n at 5. This contention is misplaced. The debriefing memoranda does not merely list Plaintiff in a "laundry list" manner. In any event, the Castillo settlement, which was executed on September 23, 2004, applies prospectively. See Castillo, No. 94-2847 MJJ, Settlement Agreement ¶ 25, ECF No. 420. Here, Plaintiff was validated on July 28, 2004, prior to the Castillo settlement.

having indicia of reliability to support prison official's conclusions that Plaintiff was an associate of the Northern Structure prison gang, the Court need not address the issue of qualified immunity.  Accordingly,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment is GRANTED.

2. Judgment shall be entered in favor of Defendants.

3. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: September 27, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge